# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MONTEFIORE MEDICAL CENTER, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT F. KENNEDY, JR., <br><br> Defendant. | Civ. Action No. 1:24-cv-1810-LLA |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM

Stephanie A. Webster
  D.C. Bar No. 479524
Chetan A. Patil
  D.C. Bar No. 999948
J. Harold Richards
  D.C. Bar No. 469524
Adam R. Safadi
  D.C. Bar No. 241305
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006-6807
stephanie.webster@ropesgray.com

*Counsel for Plaintiff*

Dated: December 22, 2025

**TABLE OF CONTENTS**

**Page**

INTRODUCTION. ............................................................................................................... 1

ARGUMENT. ...................................................................................................................... 1

I.    The Standard Remedy of Vacatur Is Warranted for the 2023 Rule. ................................... 1

    A.    The 2023 Rule's Multiple Fundamental Flaws Warrant Vacatur. .......................... 2

    B.    As *Allina I* and *II* Confirm, Vacatur Would Not Cause Disruptive
        Consequences. ........................................................................................................ 6

II.   The Agency's Decades-long Recalcitrance and Inability to Fix the Rule's
    Impermissible Retroactivity Necessitate DSH Payment Recalculation Instructions. .......... 7

CONCLUSION. .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993)..........................................................................................2, 6, 7

*Allina Health Servs. v. Price*,
863 F.3d 937 (D.C. Cir. 2017)........................................................................................................8

*Allina Health Servs. v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014) ................................................................................ *passim*

*Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*,
778 F.2d 850 (D.C. Cir. 1985)........................................................................................................8

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019)........................................................................................................................8

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988)........................................................................................................................4

*Checkosky v. SEC*,
139 F.3d 221 (D.C. Cir. 1998).....................................................................................................8, 9

*City of Port Isabel v. FERC*,
130 F.4th 1034 (D.C. Cir. 2025)...................................................................................................2

*Comcast Corp. v. FCC*,
579 F.3d 1 (D.C. Cir. 2009)........................................................................................................2, 5

*Ctr. for Biological Diversity v. Ross*,
480 F. Supp. 3d 236 (D.D.C. 2020)...............................................................................................2

*Greyhound Corp. v. Interstate Commerce Comm'n*,
668 F.2d 1354 (D.C. Cir. 1981)...............................................................................................10, 11

*Humane Soc'y of U.S. v. Zinke*,
865 F.3d 585 (D.C. Cir. 2017).......................................................................................................5

*Ill. Pub. Telecomms. Ass'n v. FCC*,
117 F.3d 555 (D.C. Cir. 1997).......................................................................................................5

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. NLRB*,
459 F.2d 1329 (D.C. Cir. 1972)......................................................................................................8

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994)..................................................................................................5

*Matson Navigation Co. v. U.S. Dep't of Transp.*,
  471 F.Supp.3d 60 (D.D.C. 2020) ..............................................................................4

*Montefiore Med. Ctr. v. Kennedy*,
  No. 24-cv-1810, 2025 WL 2801237 (D.D.C. Sept. 30, 2025)........................................ *passim*

*N.C. Fisheries Ass'n v. Gutierrez*,
  550 F.3d 16 (D.C. Cir. 2008) ....................................................................................8

*Nat'l Ass'n of Regul. Util. Comm'rs v. DOE*,
  736 F.3d 517 (D.C. Cir. 2013) ..............................................................................8, 10

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
  145 F.3d 1399 (D.C. Cir. 1998)..............................................................................2, 7

*NLRB v. Am. Geri-Care, Inc.*,
  697 F.2d 56 (2d Cir. 1982).......................................................................................10

*SecurityPoint Holdings, Inc. v. TSA*,
  867 F.3d 180 (D.C. Cir. 2017)..............................................................................2, 4, 5

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  985 F.3d 1032 (D.C. Cir. 2021)..............................................................................1, 7

*Sugar Cane Growers Co-op. of Fla. v. Veneman*,
  289 F.3d 89 (D.C. Cir. 2002)....................................................................................6

**Statutes**

5 U.S.C. § 706(2)(A)....................................................................................................1

42 U.S.C. § 1395hh................................................................................................3, 4, 9

42 U.S.C. § 1395oo(f)(2) ...........................................................................................7

**Rules and Regulations**

88 Fed. Reg. 37772 (June 9, 2023) .........................................................................9, 10

**INTRODUCTION**

This Court's holding that the 2023 rule violates the Medicare statute's protections against retroactive rulemaking and is arbitrary and capricious adds to the long series of court decisions striking down Defendant's repeated attempts at reversing course on how to treat Medicare part C patients in the DSH calculation. There is no basis for allowing the agency to keep in place the policy change that it has already invalidly attempted four times while it takes a *fifth* (doomed) mulligan into the third decade of this litigation.

Vacatur is the standard remedy for agency action with fundamental flaws like those here. The government cannot overcome the high bar of showing that the Court would "abuse its discretion by vacating the 2023 Rule." *Montefiore Med. Ctr. v. Kennedy*, No. 24-cv-1810, 2025 WL 2801237, at *23 (D.D.C. Sept. 30, 2025). The defects identified by the Court are "fatal," *id.* at *18, and no serious disruption would arise from vacatur, as the vacaturs in *Allina I* and *Allina II* confirm. And, today, there is all the more need for definitive relief given the agency's recalcitrance and the fact that there is no way the agency could lawfully fix the errors on remand. With the only option the agency asserted it had available—a retroactive rule—now foreclosed, there is nothing left for the agency to do on remand but to make DSH payments applying the pre-2004 payment policy that would again be automatically reinstated upon vacatur of the 2023 rule. The Court should thus vacate the rule and direct recalculation of Plaintiff's DSH payment, with interest, using the pre-2004 policy.

**ARGUMENT**

**I.    The Standard Remedy of Vacatur Is Warranted for the 2023 Rule.**

Vacatur is the ordinary remedy under the Administrative Procedure Act ("APA") for unlawful agency action. *See, e.g.*, *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1050-51 (D.C. Cir. 2021); 5 U.S.C. § 706(2)(A). A court may deviate from vacatur

only when an order's deficiencies are minimal or vacatur would wreak havoc. A court must consider: (1) the "seriousness of the order's deficiencies," and (2) the "disruptive consequences" of vacatur. *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993). The government "bear[s] the burden to prove that vacatur is unnecessary." *Ctr. for Biological Diversity v. Ross*, 480 F. Supp. 3d 236, 245 (D.D.C. 2020) (citation omitted). Vacatur sets aside the unlawful rule rather than its "application to the individual petitioners [being] proscribed." *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998).

Vacatur is warranted because of serious deficiencies: the 2023 rule violated the Medicare statute's anti-retroactivity provision and turned a blind eye to the substantial financial impact that retroactively applying the part C days change would impose upon hospitals. And history shows vacatur would not cause disruption. The Court should vacate the agency's latest unlawful attempt to make the same change again.

### A.    The 2023 Rule's Multiple Fundamental Flaws Warrant Vacatur.

Under the first *Allied-Signal* factor—the seriousness of the deficiencies—courts assess whether the deficiencies constitute a "fundamental flaw," *Allina Health Servs. v. Sebelius* (*Allina I*), 746 F.3d 1102, 1110 (D.C. Cir. 2014) (citation omitted). Even a single such flaw warrants vacatur, such as failing to consider an important aspect of the problem, *SecurityPoint Holdings, Inc. v. TSA*, 867 F.3d 180, 185 (D.C. Cir. 2017), or failing to "respond[] to empirical data or to an argument inconsistent with its conclusion," *Comcast Corp. v. FCC*, 579 F.3d 1, 8 (D.C. Cir. 2009). The agency committed several fundamental—indeed, "fatal"—errors here. *Montefiore*, 2025 WL 2801237, at *18. All told, there is no reason to believe "the agency could 'correct [the] deficiencies' identified and reach the same ultimate decision" on retroactivity. *City of Port Isabel v. FERC*, 130 F.4th 1034, 1037 (D.C. Cir. 2025) (citation omitted).

The Court first found that the agency violated the Medicare statute's retroactive-rulemaking prohibition because the agency did not satisfy either of the narrow criteria for retroactive rulemaking. *See Montefiore*, 2025 WL 2801237, at *14 (citing 42 U.S.C. § 1395hh(e)(1)(A)). The agency premised its invocation of the "necessary to comply with statutory requirements" exception under section 1395hh(e)(1)(A)(i) on the notion that the 2023 rule was required to make pre-2013 DSH payments because, absent a retroactive rule, there would be "no 'policy'" in force under which payments could lawfully be made. *Id.* at *15-16.

As the Court held, that premise was and is wrong. Though the agency continues, incredibly, to deny its existence, this Court and the D.C. Circuit in *Northeast Hospital* and *Allina I* have recognized that the agency had a "pre-2004 policy" of excluding part C days from the SSI fraction, and that standard was reinstated by the vacatur of the 2004 rule in *Allina I. See Montefiore*, 2025 WL 2801237, at *16, 18 (agency's claims about supposed non-existence of "pre-2004 policy" are "contradicted by the record and D.C. Circuit precedent discussing HHS's prior treatment of Part C days"); *Allina I*, 746 F.3d at 1108. Contrary to the fundamental—and false—premise of the 2023 rule, then, the agency had (and still has) an available alternative for making DSH payments other than a retroactive rule: making payments under the reinstated pre-2004 policy as the agency did for *years. See Montefiore*, 2025 WL 2801237, at *16. Likewise, the agency's claim that the "failure to apply the change retroactively would be contrary to the public interest," 42 U.S.C. § 1395hh(e)(1)(A)(ii), failed because it relied "on the same faulty logic" that a retroactive rule was required to make DSH payments due to the lack of an existing policy—logic that was "flatly contradicted by" Circuit law and the agency's own actions. *Montefiore*, 2025 WL 2801237, at *18.

It is impossible for the agency to fix these problems on remand. The Court has already held "the 2023 Rule cannot be sustained on [Defendant's] authority to make retroactive changes

3

when necessary to comply with the requirements of the Medicare statute," *id.* at \*16, and that finding closes the door on a do-over invoking section 1395hh(e)(1)(A)(i).  Similarly, on the public interest exception, the agency's bare invocation of the "need to faithfully administer the Medicare statute" runs afoul of the statute's retroactivity prohibition because it "turns a statutory limitation into a floodgate favoring retroactivity."  *Montefiore*, 2025 WL 2801237, at \*18.  That is also not a problem the agency can surmount by spilling more ink.  It has already had ample opportunity to do, and it has never suggested any other reason why a decision *not* to penalize hospitals for long past cost years would be contrary to the public interest.

In committing these fundamental statutory violations, the agency committed other core errors warranting vacatur of the rule.  The agency entirely failed to "consider an important aspect of the problem"—namely, the elementary-fairness "costs of imposing [a] requirement retroactively."  *Montefiore*, 2025 WL 2801237, at \*18 (citation omitted).  This "fatal defect . . . renders the 2023 Rule defective," *id.*, and independently requires vacatur, *see SecurityPoint Holdings*, 867 F.3d at 185 (holding the "court *must* vacate" action where agency "entirely failed to consider an important aspect of the problem" (emphasis added)); *Matson Navigation Co. v. U.S. Dep't of Transp.*, 471 F.Supp.3d 60, 64 (D.D.C. 2020) (holding that the agency's "failure to consider and to address an important aspect of the problem" is "a major shortcoming that also counsels vacatur on remand" (cleaned up)).

The constitutional origins of the presumption against retroactivity underscore the fundamental nature of the agency's errors.  *See Montefiore*, 2025 WL 2801237, at \*13 (confirming *Loper Bright* did not overturn *Bowen* "and its progeny"); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (noting that "retroactivity is not favored in the law").  By promulgating an impermissibly retroactive rule, the agency transgressed constitutionally rooted principles—

4

"centuries older than our Republic"—that are designed to protect fundamental interests of fair notice and settled expectations. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).

The Court also found the 2023 rule was arbitrary and capricious because the agency failed to respond rationally to commenters' arguments about the enormous financial impact of retroactivity on hospitals or to "significant comments" about inherent flaws in the agency's financial model. *Montefiore*, 2025 WL 2801237, at \*22 (citation omitted). The agency's failure to consider the substantial fiscal impact on hospitals is a "major shortcoming[] that go[es] to the heart of the [agency's] decision" and therefore supports vacatur. *Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585, 614 (D.C. Cir. 2017); *see also SecurityPoint Holdings*, 867 F.3d at 185. These errors compound in a "particularly troubling" way given that the agency rested its impermissibly retroactive rule on a purported public interest rationale. *Montefiore*, 2025 WL 2801237, at \*22.

The vacatur-worthy errors pile on from there. When an agency "has not responded to empirical data or to an argument inconsistent with its conclusion," courts do "not hesitate[]" to vacate the resulting rule. *Comcast*, 579 F.3d at 8. In one such case, the D.C. Circuit vacated an FCC order failing to provide anything more than a conclusory response to countervailing arguments and data. *Ill. Pub. Telecomms. Ass'n v. FCC*, 117 F.3d 555 (D.C. Cir. 1997), *decision clarified on reh'g*, 123 F.3d 693 (D.C. Cir. 1997) (clarifying *Illinois* intended to vacate FCC order). So, too, here. This Court held that the agency responded to commenters' arguments about the significant financial impact on hospitals with nothing more than "paltry, contradictory, and otherwise non-responsive answers." *Montefiore*, 2025 WL 2801237, at \*21. And the agency "offered more contradictory and non-responsive answers" to arguments that its financial projections were irreconcilable with its representations to the Supreme Court that the payment

5

change would have billions of dollars of impact. *Id.* Here, then, the agency's failure to grapple with countervailing arguments and data independently also requires vacatur.

**B.    As *Allina I* and *II* Confirm, Vacatur Would Not Cause Disruptive Consequences.**

The second *Allied-Signal* factor examines whether vacatur would cause "disruptive consequences [through] an interim change that may itself be changed" once the agency takes further action on remand. *Allied-Signal*, 988 F.2d at 150-51 (citation omitted). D.C. Circuit precedent and the long history of the agency's attempts to resurrect its part C days change make plain the absence of such disruptive consequences. The government did not identify in its summary judgment briefing any disruptive consequences that could occur if the 2023 rule were vacated, and there is no need to speculate about the consequences of vacatur. The parties have been here before—repeatedly.

In *Allina I*, the D.C. Circuit considered the same question regarding the 2004 incarnation of the part C position change at issue here—and unequivocally concluded that vacatur was warranted. *Allina I,* 746 F.3d at 1110-11 (holding that vacatur of earlier challenged part C days rule would not "lead to disruptive consequences"). As in *Allina I*, "[t]his is not a case in which the 'egg has been scrambled,' and it is too late to reverse course." *Id.*; *see also Allina I*, 904 F. Supp. 2d 75, 95 (D.D.C. 2012) (concluding that the lack of disruptive consequences "heavily favors vacatur"), *aff'd in part, rev'd in part*, 746 F.3d 1102 (D.C. Cir. 2014); *cf. Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002) (identifying disruptive consequences of vacating a challenged agricultural program where it was not possible to restore the status quo ante because crops had already been "plowed under"). *Allina I* is on point D.C. Circuit precedent on this factor, and it points squarely toward vacatur.

6

Tellingly, the government in *Allina I* did not even argue that vacating the 2004 rule would cause specific or substantial disruptive consequences—never mind the extreme disruption necessary to deviate from the ordinary remedy of vacatur. *See Standing Rock*, 985 F.3d at 1051; *see, e.g.*, Defendant's Motion for Summary Judgment, *Allina I*, No. 10-cv-1463 (D.D.C. Mar. 5, 2012), Dkt. No. 35 (offering no disruptive consequences of vacatur); Brief for Appellant Kathleen Sebelius at 18, *Allina I*, No. 13-5011, (D.C. Cir. July 1, 2013), Doc. No. 1444609 (citing *Allied-Signal* but declining to argue any specific disruptive consequences would arise from vacatur). The government would have no basis to reverse its position here given that no disruptive consequences followed the restoration of the pre-2004 standard after the vacatur in *Allina I* or *Allina II*. *See* Order at 2, *Allina Health Servs. v. Azar* (*Allina II*), No. 14-1415-TJK (D.D.C. Sept. 14, 2019), Dkt. No. 58 (vacating fiscal year 2012 DSH fractions on remand from the Supreme Court); *see also Montefiore*, 2025 WL 2801237, at *16 (invoking "basic tenets of administrative law" in concluding vacatur reinstates the prior policy (citation omitted)). Both factors of the *Allied-Signal* test therefore warrant the "ordinary" remedy of vacatur. *Nat'l Mining Ass'n*, 145 F.3d at 1409.

## II.    The Agency's Decades-long Recalcitrance and Its Inability to Fix the Rule's Impermissible Retroactivity Necessitate DSH Payment Recalculation Instructions.

The seriousness of the 2023 rule's deficiencies and the agency's decades of unlawful action necessitate not only vacatur, but vacatur with specific instructions for the agency to recalculate Plaintiff's DSH payment by applying the pre-2004 policy to both DSH fractions and paying litigation interest calculated under 42 U.S.C. § 1395oo(f)(2). *See* Pl's. Mot. Summ. J. 43-44, Dkt. No. 19-1 (requesting instructions and litigation interest); Compl. at 55, Dkt. No. 1 (same). That pre-2004 policy and practice—found by the D.C. Circuit in *Northeast Hospital* and reinstated by the vacatur upheld by the D.C. Circuit in *Allina I*—would once again automatically be restored by vacatur of the 2023 rule. *Montefiore*, 2025 WL 2801237, at *16. The agency now has no viable

7

path for lawfully reversing policy for cost reporting periods before October 1, 2013. But history shows that the agency is likely to delay the inevitable, as it has spent more than a decade trying to find ways around the *Northeast Hospital* and *Allina I* rulings and dragging its feet along the way, as the years-long wait after the *Allina II* decision for the 2023 rule attests. Accordingly, this Court should vacate the 2023 rule and direct the agency to do the only thing it can lawfully do: recalculate Plaintiff's DSH fractions based on the pre-2004 policy.

The D.C. Circuit has repeatedly recognized that courts may issue detailed instructions for an agency to take on remand following vacatur. *See, e.g.*, *N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 20 (D.C. Cir. 2008) (describing the authority to "issue detailed remedial orders" instructing agencies to take specific action upon remand); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. NLRB*, 459 F.2d 1329, 1347 (D.C. Cir. 1972) (directing agency how to dispose of case). The D.C. Circuit has held that such relief is warranted in two circumstances: (1) when there is only one course the agency can lawfully follow on remand, *Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*, 778 F.2d 850, 862 n.19 (D.C. Cir. 1985), and (2) when the agency has previously evaded its legal duties after prior remands, *Nat'l Ass'n of Regul. Util. Comm'rs v. DOE*, 736 F.3d 517, 520 (D.C. Cir. 2013); *Checkosky v. SEC*, 139 F.3d 221, 227 (D.C. Cir. 1998). Here, both are true.

*First*, after two decades of litigation favoring the hospitals, there is now only one way for the agency to make DSH payments for pre-2013 cost years: apply the pre-2004 policy. The agency's first attempt to change its part C days policy was vacated in *Allina I*, which reinstated the pre-2004 policy. *Montefiore*, 2025 WL 2801237, at \*16. The agency then tried again through a no-notice rule and through adjudication, which were both rejected by the courts. *See Azar v. Allina Health Servs.* (*Allina II*), 587 U.S. 566, 583-84 (2019); *Allina Health Servs. v. Price* (*Allina II*),

863 F.3d 937, 945 (D.C. Cir. 2017).  Thereafter, the agency itself asserted that the "only way" to change its pre-2013 treatment of part C days was through a retroactive notice-and-comment rule. 88 Fed. Reg. 37772, 37775 (June 9, 2023); *supra* 1-2.

In other words, the 2023 retroactive rule was the last arrow left in the agency's quiver.  As this Court held, that arrow once again missed the mark.  *See Montefiore*, 2025 WL 2801237, at *16-18.  And as the Court further explained, the agency cannot suddenly disclaim rulemaking and avoid the rule's problems, because the limitation on retroactivity applies to "substantive changes in agency *action*," regardless of procedural form.  *Id.* at *14; *see also* 42 U.S.C. § 1395hh(e)(1)(A) (retroactivity limits apply to "substantive change in regulations, manual instructions, interpretative rules, statements of policy, or guidelines of general applicability").  There is also no viable path for meeting the narrow exceptions permitting retroactivity, as discussed above.  Simply put, the agency has finally reached the end of the road.

*Second*, the agency's continuing refusal to accept previous binding court rulings further justifies specific instructions.  *See Checkosky*, 139 F.3d at 227 (denying SEC a "third 'shot at the target'" where court had previously remanded without instructions and the agency had repeatedly failed over six years to articulate a legal standard for the rule it was attempting to enforce (citation omitted)).  D.C. Circuit precedent is clear: when an agency has repeatedly failed—or refused—to validly change its approach on remand, a court has the authority to issue specific instructions to resolve the case rather than allow the agency yet another "shot at the target." *Checkosky*, 139 F.3d at 227 ("In view of the Commission's repeated failure to articulate a discernible standard . . . [following a previous remand], the extraordinary [six-year] duration of these proceedings, and the apparent unlikelihood of a clear resolution of remand, we conclude that it would be futile to allow

9

the SEC a third shot at the target." (cleaned up)); *see also Nat'l Ass'n of Regul. Util. Comm'rs*, 736 F.3d at 520.

Here, the agency's efforts to change its part C days policy have been struck down repeatedly, *see supra* 1, 8-9, but the agency has refused to take no for an answer, and in the 2023 rule, sought to (invalidly) impose its part C days policy retroactively to all cost years before 2013 in part by flatly contradicting some of these prior rulings. *See Montefiore*, 2025 WL 2801237, at *16. Not only has the agency continued to refuse to apply the reinstated pre-2004 policy despite these decades of losses, but it has also affirmatively denied the existence of that policy and refused to recognize the D.C. Circuit's conclusions about it. 88 Fed. Reg. at 37783 ("[*Northeast Hospital*] did not hold that this practice amounted to a policy."). Indeed, the 2023 retroactive rule was itself premised on the very denial of this legal reality. *See Montefiore*, 2025 WL 2801237, at *16 (describing how agency argued there was no policy to apply absent the 2023 rule). Granting the agency a *fifth* bite at the apple would simply legitimize this strategy. *See NLRB v. Am. Geri-Care, Inc.*, 697 F.2d 56, 64 (2d Cir. 1982) (remand is inappropriate "because there is not the slightest doubt that the Board would simply reaffirm its order").

The agency's approach to these repeated court rulings mirrors that of the agency at issue in *Greyhound Corp. v. Interstate Commerce Commission*, 668 F.2d 1354 (D.C. Cir. 1981). There, the D.C. Circuit reviewed a determination by the Interstate Commerce Commission ("ICC") that it could extend its regulatory securities jurisdiction to the non-carrier holding company of a common carrier—in that case, Greyhound. The D.C. Circuit had previously held the ICC's change in position on its jurisdiction was unexplained and invalid, remanding with directions to either "rectify or explain the deviations." *Id.* at 1357-58. In response, the ICC reissued a similar order, based upon the same standard, that retained jurisdiction over Greyhound. The second time around,

10

the D.C. Circuit vacated and remanded the order with "directions to release Greyhound from the Commission's [regulatory] jurisdiction." *Id.* at 1364-65.  Because the ICC "had ample time and opportunity to provide a reasoned explanation of the decision to continue the exercise of its [regulatory] jurisdiction," but failed to do so, "no useful purpose [would] be served by allowing the Commission another shot at the target." *Id.* at 1364.

Here, the agency had not just years but *decades* to own up to the significant financial impact of its policy reversal and to address that impact (including, as relevant here, the impact of the agency's retroactivity choice).  It has repeatedly refused to do so—except when doing so boosted its chances of getting certiorari from the Supreme Court.  And yet, the agency continues to try to circumvent judicial rulings, even still denying the existence of a pre-2004 policy that the D.C. Circuit found in *Northeast Hospital* and reinstated by vacating the 2004 rule in *Allina I*.  Indeed, by continuing to deny the effect of vacatur—i.e., reinstatement of the pre-2004 policy—the agency has itself demonstrated that vacatur alone would not suffice in the absence of instructions.

## CONCLUSION

For the foregoing reasons, the Court should both vacate the rule and instruct the agency to do what the law already requires: recalculate Plaintiff's fractions and pay DSH amounts due under the pre-2004 policy and practice.

11

Respectfully submitted,

*/s/ Stephanie A. Webster*
Stephanie A. Webster
  D.C. Bar No. 479524
Chetan A. Patil
  D.C. Bar No. 999948
J. Harold Richards
  D.C. Bar No. 469524
Adam R. Safadi
  D.C. Bar No. 241305
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006-6807
stephanie.webster@ropesgray.com

*Counsel for Plaintiff*

Dated: December 22, 2025

12