## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MONTEFIORE MEDICAL CENTER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ROBERT F. KENNEDY, JR.**, | ) | Case No. 24-cv-1810 (LLA) |
| *in his official capacity as Secretary* | ) | |
| *of Health and Human Services*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT'S SUPPLEMENTAL MEMORANDUM

The Court's summary judgment opinion resolved two issues: the meaning of the statutory provision at issue here and the validity of the challenged rule. The Court concluded that "the Medicare statute requires the inclusion of Part C days in the Medicare fraction and their exclusion from the numerator of the Medicaid fraction" of the disproportionate share hospital (DSH) adjustment. Mem. Op. at 13; *see* 42 U.S.C. § 1395ww(d)(5)(F)(vi). The Court also found that the rule implementing that statutory requirement for the period before Fiscal Year 2014 was invalid. Mem. Op. at 26–49. The only question left to decide is what remedy should follow from those conclusions.

Plaintiff urges the Court to vacate the rule and instruct the Secretary to violate the statute on remand. It should not do so. Whatever remedy the Court chooses should not be accompanied by detailed instructions for how to proceed on remand, because the Secretary is entitled to consider how to comply with the Medicare statute and this Court's ruling in the first instance. The challenged decision should therefore be "remanded to the agency for further action consistent with the corrected legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir.

1995).  The Secretary also respectfully contends that party-specific declaratory relief against the challenged rule would fully remedy Plaintiff's injuries and is therefore appropriate here.

## ARGUMENT

### A.   The Court should not instruct the Secretary to violate the Medicare statute.

The Court has determined that "the Medicare statute requires the inclusion of Part C days in the Medicare fraction and their exclusion from the numerator of the Medicaid fraction."  Mem. Op. at 13; *see id.* at 17 (noting that "this case . . . presents the distinct question whether the Medicare statute *requires*" that treatment of "Part C patient days" in calculating the DSH adjustment).  As the Court has explained, "it follows from the Supreme Court's interpretation of the Medicare statute that any individual who is over 65 or receiving disability benefits for 24 months is 'entitled to [Part A] benefits' for purposes of [42 U.S.C. §] 1395ww(d)(5)(F)(vi) even when he opts out of receiving Part A benefits and enrolls in Part C benefits."  *Id.* at 17–18 (first alteration in original); *see Becerra v. Empire Health Found. for Valley Hosp. Med. Ctr.*, 597 U.S. 424 (2022).  Yet Plaintiff asks the Court to enter a remedial order providing "specific instructions for the agency to recalculate Plaintiff's DSH payment" in violation of the statute, by excluding Part C days from the Medicare fraction.  Br. at 7.  The Court should not do so.

When a court "identifies an agency error," it "normally . . . remand[s] to the agency for further proceedings" consistent with its ruling.  *N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 550 F.3d 16, 20 (D.C. Cir. 2008).  That is the normal practice because, "[u]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."  *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995).  For that reason, the D.C. Circuit has reversed a district court that "required the

Secretary to affirmatively count Part C days under the Medicaid fraction" on remand, explaining that the district "court erred by directing the Secretary how to calculate the hospitals' reimbursements, rather than just remanding after identifying the error." *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014).

"Only in extraordinary circumstances do [courts] issue detailed remedial orders," such as the one that Plaintiff requests here. *N.C. Fisheries Ass'n*, 550 F.3d at 20; *accord In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 634 (D.C. Cir. 2014). Plaintiff contends that this case presents extraordinary circumstances justifying a detailed remedial order. To understand why Plaintiff is incorrect requires a brief review of the lengthy history that brought this case before the Court.

In the early years of what is now the Medicare Advantage program, "[t]he Secretary's practice . . . was to exclude Part C days from . . . the Medicare fraction" when calculating the DSH adjustment. 2023 Rule, 88 Fed. Reg 37,772, 37,783 (June 9, 2023); *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 16–17 (D.C. Cir. 2011) (discussing "[t]he Secretary's . . . former practice of excluding [Part C] days from the Medicare fraction"); *see* Mem. Op. at 6. That practice violated the Medicare statute as this Court has interpreted it.

In 2004, the Secretary issued a rule that would have brought its practice in line with the Court's statutory interpretation, but the rule was vacated on procedural grounds. *Allina*, 746 F.3d at 1109–10; *see* 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004). In 2013, the Secretary issued another rule adopting the same statutory interpretation, which applied prospectively and remains in effect. 78 Fed. Reg. 50,496, 50,614 (Aug. 19, 2013). In 2014, the Secretary applied that interpretation to Fiscal Year 2012, by posting calculations on the CMS website. The Supreme

Court found that action to be procedurally invalid.  *Azar v. Allina Health Servs.*, 587 U.S. 566, 583–84 (2019).

Throughout this period, the Secretary understood the Medicare statute to be ambiguous as to the treatment of Part C days in calculating the DSH adjustment.  *See id.* at 583.  Under the familiar *Chevron* doctrine, a statutory ambiguity constituted "an express delegation of authority to the agency to elucidate" that "provision of the statute by regulation"—that is, "a gap for the agency to fill."  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984).  The D.C. Circuit accepted the Secretary's view, concluding that Congress had not addressed the "precise question" of the treatment of Part C days, *id.* at 843, and had therefore "left a statutory gap . . . for the Secretary . . . to fill."  *Ne. Hosp.*, 657 F.3d at 13.  The Supreme Court "express[ed] no opinion on whether the statute in fact contains such a 'gap,'" but noted the Secretary's view that it did.  *Allina*, 587 U.S. at 583 (describing the Secretary's interpretation as "avowedly 'gap'-filling"); *see* Proposed Rule, 85 Fed. Reg. 47,723, 47,725 (Aug. 6, 2020) (asserting that "CMS must determine whether beneficiaries enrolled in Part C are 'entitled to benefits under part A'").

*Empire Health* changed the Secretary's view of the statute, by interpreting the language at issue here without reference to *Chevron*.  As this Court has explained, the Supreme "Court understood the phrase 'entitled to [Part A] benefits' to be a 'term of art' with a 'surprisingly clear meaning' that is consistent 'throughout the Medicare statute.'"  Mem Op. at 15–16 (quoting *Empire Health*, 597 U.S. at 434–35).  The Supreme Court found that "the entitlement to Part A benefits under the Medicare statute is 'automatic' based on age or disability."  *Id.* at 16 (quoting *Empire Health*, 597 U.S. at 436).  The "entitlement arises when a person meets the basic statutory qualifications and (unless a disability diminishes) never goes away."  *Empire Health*, 597 U.S. at

437.  After *Empire Health*, the Secretary no longer understood himself to have a statutory gap to fill, because the logic of that decision made it "clear that the statute . . . requires the Secretary to count Part C days in the Medicare fraction."  2023 Rule, 88 Fed. Reg. at 37,774.  Nevertheless, in finalizing the rule challenged here, the Secretary hedged his bets and exercised his regulatory authority "to the extent there is still a statutory gap for the Secretary to fill after *Empire*."  *Id.*

When the Supreme Court overruled *Chevron*, it changed the significance of statutory gaps in administrative law.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).  Under *Loper Bright*, "a statutory ambiguity . . . is not a delegation to anybody" because "statutes, no matter how impenetrable, do—in fact, must—have a single, best meaning."  *Id.* at 400; *see id.* at 401 (explaining that "[t]he very point of the traditional tools of statutory construction . . . is to resolve statutory ambiguities").  So it no longer matters whether, in some abstract sense, the Medicare statute is ambiguous as to the treatment of Part C days in calculating the DSH adjustment.  All that matters now is "the best reading of the statute," *id.* at 400, which, as this Court has already determined, is the reading that the Secretary has advanced for more than twenty years.

On remand, the Secretary will therefore face a novel situation: a Medicare statute that does not require agency action to clarify its ambiguities (as the Secretary long believed that it did) and a ruling from this Court prohibiting retroactive rulemaking to adopt the statutorily required treatment of Part C days.  The Court has held that the Secretary may not exercise his retroactive rulemaking authority under 42 U.S.C. § 1395hh(e)(1)(A) here to comply with § 1395ww(d)(5)(F)(vi), which "requires the inclusion of Part C days in the Medicare fraction and their exclusion from the numerator of the Medicaid fraction."  Mem. Op. at 13; *see id.* at 32–36.  But the Court did not address the question expressly reserved by the Supreme Court in *Allina*: whether rulemaking is necessary in the first place under § 1395hh(a)(2) when "the statute itself

require[s] [the Secretary] to count Part C patients in the Medicare fraction" and the Secretary

therefore is not engaged in *Chevron*-style gap-filling.  587 U.S. at 583 (emphasis omitted).  If

rulemaking is unnecessary, then the Secretary could comply with the Medicare statute on remand

while adhering to this Court's prohibition on retroactive rulemaking.  And in any event, the

Secretary should be permitted to address this question in the first instance on remand.

On remand, the Secretary will also have the opportunity to consider the potential relevance

of the precedents surrounding "an administrative agency's retroactive application of a judicial

decision."  *Nat'l Gas Fuel Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir. 1995).  As the

D.C. Circuit has explained, "the decision of an Article III court . . . announces the law 'as though

[it] were finding it—discerning what the law is, rather than decreeing what it is . . . changed to, or

what it will tomorrow be,'" and therefore "all parties charged with applying that decision, whether

agency or court, state or federal, must treat it as if it had always been the law."  *Id.*  (quoting *James

B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., joined by Marshall, J. and

Blackmun, J., concurring in the judgment)).  The D.C. Circuit continued:

> The agency must give retroactive effect to the ruling of a federal court because of
> the nature of that court.  Just as an Article III court may not issue an advisory
> decision, it may not issue a decision for less than all seasons, for some citizens and
> not others, as an administrator shall later decide.  In sum, the decision of a federal
> court must be given retroactive effect regardless whether it is being applied by a
> court or an agency.

*Id.*  Because the Secretary believes that the inclusion of Part C days in the Medicare fraction is

compelled by the Supreme Court's decision in *Empire Health*—a question which this Court did

not resolve, *see* Mem. Op. at 17—he will also need to consider his obligation to give that decision

retroactive effect in light of the Court's prohibition on retroactive rulemaking.  These questions

were "not before the district court," and should be left for the Secretary to resolve in the first

instance.  *Allina*, 746 F.3d at 1111.

Plaintiff's arguments to the contrary are unavailing. Plaintiff first contends that, on remand, there will be "only one way for the agency to make DSH payments for pre-2013 cost years: apply the pre-2004 policy" in violation of the Medicare statute. Br. at 8. Plaintiff insists that "the agency itself" has "asserted that the 'only way' to change its pre-2013 treatment of part C days was through a retroactive notice-and-comment rule." *Id.* at 9 (quoting 2023 Rule, 88 Fed. Reg. at 37,775). That is incorrect. The full context of the Secretary's quoted statement was this:

> Because the Supreme Court has held . . . that, unless an exception applies, CMS cannot establish or change "an avowedly 'gap'-filling policy" under the Medicare statute except by notice-and-comment rulemaking, we have concluded that, **to the extent there is a gap after *Empire***, the only way for CMS to resolve this issue and properly calculate DSH payments for time periods before FY 2014 is to promulgate a new regulation through notice-and-comment rulemaking that would apply retroactively. . . .

2023 Rule, 88 Fed. Reg. at 37,775 (quoting *Allina*, 587 U.S. at 583) (emphasis added). As explained above, *Loper Bright* eliminated any need for a gap-filling policy to resolve the treatment of Part C days. And so the question of whether retroactive rulemaking is the "only way" for the Secretary to comply with the Medicare statute was not answered in the rulemaking at issue here, has not been presented to this Court, and should be considered in the first instance by the Secretary on remand.

Plaintiff also argues that specific instructions are justified because the Secretary has refused "to accept previous binding court rulings," Br. at 9, but the history discussed above shows that he did not. For more than twenty years, the Secretary tried to comply with the Medicare statute by including Part C days in the Medicare fraction of the DSH adjustment. One effort was rejected for a deficiency in the notice of proposed rulemaking. *Allina*, 746 F.3d at 1109–10; *see* 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004). Another was rejected for lack of rulemaking "on the strength of the arguments [the Secretary] . . . advanced in th[at] case," which presented it as a gap-filling

policy under *Chevron*. *Allina*, 587 U.S. at 583–84. The Secretary did not refuse to accept either ruling. In response to the first decision, the Secretary issued a prospective rule that cured the procedural defect. 78 Fed. Reg. 50,496, 50,614 (Aug. 19, 2013). And in response to the second ruling, the Secretary issued the retroactive rule that is at issue here. The Secretary's actions on remand would similarly respect this Court's ruling, after the conclusion of any potential appeal.

**B.      The Court should not vacate the challenged rule.**

The Court should enter party-specific relief as to the challenged rule, because the Administrative Procedure Act (APA) does not authorize vacatur or a departure from traditional principles of equity, which limit courts to party-specific relief tailored to the legal violation.

We acknowledge that the D.C. Circuit has held that universal vacatur is an available remedy under the APA. We respectfully note that that holding is mistaken. In APA challenges, as in any other case involving non-monetary relief, federal courts are authorized to award traditional party-centered remedies such as declaratory judgments and, where necessary, appropriately tailored injunctions. But the APA does not authorize courts to radically depart from those traditional remedies, let alone to do so by default through remedies such as vacatur. *See United States v. Texas*, 599 U.S. 670, 693–703 (2023) (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment). *But cf. Corner Post, Inc. v. Board of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826–43 (2024) (Kavanaugh, J., concurring) (expressing a contrary view). Under Section 702 of the APA, judicial review is available only to "person[s]" who have "suffer[ed] legal wrong because of agency action, or [been] adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Aggrieved persons may seek remedies as set forth in the succeeding section, 5 U.S.C. § 703. Section 703 specifies that where, as here, there is no "special statutory review proceeding" applicable to the matter, the plaintiff may bring "any applicable form

of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus." *Id.* "Conspicuously missing from [this list of remedies] is vacatur." *Texas*, 599 U.S. at 698 (Gorsuch, J., concurring). And in the absence of a special review statute, the ordinary method of review before the enactment of the APA was a suit in equity against a federal official, typically seeking a prohibitory injunction. *See, e.g.*, *American Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902).

Nonetheless, the D.C. Circuit has invoked § 706(2) of the APA when authorizing vacatur. *E.g.*, *United Steel v. Mine Safety Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action." (citing § 706(2))); *see Texas*, 599 U.S. at 701 (Gorsuch, J., concurring). But those precedents do not meaningfully grapple with § 706(2)'s text, which states that, in certain circumstances, a reviewing court "shall . . . hold unlawful and set aside agency action." 5 U.S.C. § 706. As discussed, remedies under the APA are governed by Section 703. Section 706, by contrast, is "titled 'Scope of review'" and addresses "the court's decisional process leading up to [its] judgment," not "the remedies the court may authorize after reaching its judgment on the merits." *Texas*, 599 U.S. at 696 (Gorsuch, J., concurring). This usage also makes sense of the phrase "set aside" in all settings where Section 706(2) applies. The APA expressly permits, for example, challenges to agency action to be raised in "actions for declaratory judgment" or "habeas corpus" actions, 5 U.S.C. § 703, but "no one thinks a court adjudicating a declaratory action or a habeas petition 'vacates' agency action along the way." *Texas*, 599 U.S. at 699 (Gorsuch, J., concurring). And the same point holds true for the APA's instruction that a court should disregard unfounded "findings" or "conclusions"; it makes little sense to say that a court "vacates" those as opposed to simply disregarding them for purposes of resolving the case before it. *Id.* at 697–98 (Gorsuch, J., concurring).

Separately, even if vacatur were a permissible remedy under the APA, it is an equitable remedy subject to ordinary equitable principles. The D.C. Circuit, like other circuits, has recognized the equitable nature of vacatur in embracing the concept of remand without vacatur, in which a court withholds immediate relief based on the equities of a given case. *See, e.g.*, *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993). But as an equitable remedy, vacatur would be subject to the same limiting principles as other equitable remedies. Nothing about the term "set aside" suggests that Congress intended to "overthrow the 'bedrock practice of case-by-case judgments with respect to the parties in each case'" and authorize sweeping relief as a matter of course. *See Texas*, 599 U.S. at 695, 702 (Gorsuch, J., concurring) (citation omitted). To the contrary, the APA expressly states that "[n]othing" in the statute "affects . . . the power or duty of the court to . . . deny relief on any . . . equitable ground." 5 U.S.C. § 702(1). Courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944); *accord Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) ("When Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity."). Courts should accordingly consider whether declaratory or injunctive relief in lieu of vacatur is appropriate and, if not, whether any vacatur remedy should be tailored rather than universal.

One equitable principle is particularly relevant here. Remedies "ordinarily operate with respect to specific parties," rather than "on legal rules in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021) (quotation marks omitted). And equitable relief should "be no more

burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (quoting parenthetically *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  A party-specific declaration that the challenged rule is unlawful would fully remedy Plaintiff's injuries and should therefore be entered here.

The Secretary does not seek remand of the challenged rule for further explanation under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993).

## CONCLUSION

The Court should not instruct the Secretary how to proceed on remand, and should enter party-specific declaratory relief to address the deficiencies identified in the challenged rule, in accordance with traditional equitable principles.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MICHELLE BENNETT
Assistant Director

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

Date: January 30, 2026