**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MONTEFIORE MEDICAL CENTER,<br><br>              Plaintiff,<br><br>v.<br><br>ROBERT F. KENNEDY, JR.,<br><br>              Defendant. | Civ. Action No. 1:24-cv-1810-LLA |

**<u>PLAINTIFF'S SUPPLEMENTAL REPLY MEMORANDUM</u>**

Stephanie A. Webster
  D.C. Bar No. 479524
Chetan A. Patil
  D.C. Bar No. 999948
Adam R. Safadi
  D.C. Bar No. 241305
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006-6807
stephanie.webster@ropesgray.com

*Counsel for Plaintiff*

Dated: February 23, 2026

i

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.       The Government Does Not Dispute Circuit Precedent Requires Vacatur Here .................. 1

II.      To Effectuate this Court's Decision, the Court Should Instruct the Agency Not to
         Violate Section 1395hh(e) and to Apply the Pre-2004 Policy. .......................................... 2

CONCLUSION ......................................................................................................................... 7

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
 988 F.2d 146 (D.C. Cir. 1993) ...................................................................................................1

*Allina Health Servs. v. Sebelius,*
 904 F. Supp. 2d 75 (D.D.C. 2012) .............................................................................................7

*Allina Health Servs. v. Sebelius,*
 746 F.3d 1102 (D.C. Cir. 2014) ..........................................................................................2, 6, 7

*Allina Health Servs. v. Price,*
 863 F.3d 937 (D.C. Cir. 2017) ...................................................................................................6

*Azar v. Allina Health Servs.,*
 587 U.S. 566 (2019) ...................................................................................................................2

*Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.,*
 597 U.S. 424 (2022) ...........................................................................................................3, 4, 5

*Northeast Hosp. Corp. v. Sebelius,*
 657 F.3d 1 (D.C. Cir. 2011) .......................................................................................................6

*Trump v. CASA, Inc.,*
 606 U.S. 831 (2025) ...................................................................................................................2

**Federal Statutes**

*42 U.S.C. § 1395hh ............................................................................................................3, 4, 5, 7

**Regulations**

88 Fed. Reg. 37772 (June 9, 2023) .............................................................................................3

* Denotes authorities chiefly relied upon

## INTRODUCTION

The government's brief reinforces that, after two decades of litigation, only vacatur of the 2023 rule with specific remand instructions would finally end this litigation. The government concedes that binding D.C. Circuit precedent establishes universal vacatur as the default remedy for unlawful agency action, and it does not even argue that *Allied-Signal* precludes vacatur here. Instead, the government suggests, admittedly against established D.C. Circuit precedent, that the Court cannot vacate unlawful rules under the Administrative Procedure Act ("APA") and that any relief associated with vacatur of the 2023 rule should apply only to Plaintiff. The government also declares that it can do on remand what this Court *has already rejected* as unlawful: apply its new statutory interpretation retroactively to pre-2013 cost years. The agency has unsuccessfully exhausted every option for applying its policy change to these years. The government's latest readiness to brush past this Court's merits ruling underscores the need for not just vacatur of the unlawful retroactive rule, but also for specific remand instructions to apply the pre-2004 policy and, thus, not to violate the Medicare statute's prohibition on retroactive action.

## ARGUMENT

### I.    The Government Does Not Dispute Circuit Precedent Requires Vacatur Here.

By disclaiming any argument for an exception under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993), to the standard remedy of vacatur, the government concedes that vacatur of the 2023 retroactive rule is required. The government's brief admits it does "not seek remand of the challenged rule for further explanation under *Allied-Signal*." Def.'s Suppl. Mem. 11, Dkt. No. 36. Instead, the government argues that decades-old Circuit precedent is wrong because the APA does not authorize vacatur. *Id.* at 8-9. But the government admits, as it must, that this is not the law of this Circuit, Def.'s Suppl. Mem. 8, and this Court is "duty-bound to 'follow'" that precedent, Mem. Op. 27-28, Dkt. No. 31, 2025 WL 2801237, at *13

(D.D.C. Sept. 30, 2025).[1]  And despite the government's claim that "any vacatur remedy should be tailored rather than universal," Def.'s Suppl. Mem. 10-11, Circuit law not addressed by the government specifies otherwise, Pl.'s Suppl. Mem. 2, Dkt. No. 34.

The government's assertions regarding the defensibility and scope of vacatur are squarely foreclosed by controlling precedent, and vacatur of the 2023 rule is required.

**II.    To Effectuate this Court's Decision, the Court Should Instruct the Agency Not to Violate Section 1395hh(e) and to Apply the Pre-2004 Policy.**

The D.C. Circuit has long recognized that specific instructions on remand are warranted if *either* the agency has only one lawful option available on remand *or* it has repeatedly failed to justify its policy after multiple prior remands.  Pl.'s Suppl. Mem. 9.  The government does not dispute this authority.  *See* Def.'s Suppl. Mem. 3.  Instead, it argues that, on remand, the agency could pursue the option of applying its new interpretation of the statute to pre-2013 cost years without rulemaking, on the theory that the Supreme Court in *Allina II* left open the question of whether rulemaking would be required in the absence of a statutory gap.  *Id.* at 5-6 (citing *Azar v. Allina Health Servs.*, 587 U.S. 566, 583 (2019)).  But this very option "was before th[is] Court," *Allina Health Servs. v. Sebelius* (*Allina I*), 746 F.3d 1102, 1111 (D.C. Cir. 2014), and the Court rejected it, Mem. Op. 29-31, 2025 WL 2801237, at *14.  The government's intent to resuscitate an option this Court already found unlawful shows why specific instructions are warranted.

*First*, for 20 years, the agency has tried every procedural avenue for changing its part C days policy for pre-2013 cost years, to no avail.  *See* Pl.'s Suppl. Mem. 8-9.  The agency's last gambit was the 2023 rule, which the Court held impermissibly retroactive.  *See* Mem. Op. 34-40, 2025 WL 2801237, at *16-18.  Indeed, the government now concedes that "[t]he Court has held

---

[1]  The only majority opinion the government cites is *Trump v. CASA, Inc.*, which did not "resolve[] the distinct question [of] whether the [APA] authorizes federal courts to vacate federal agency action."  606 U.S. 831, 847 n.10 (2025).

that the Secretary may not exercise his retroactive rulemaking authority," Def.'s Suppl. Mem. 5, and does not claim that it could rehabilitate its retroactive rule on remand with further explanation, *id.* at 11. Thus, the only lawful action on remand would be to make DSH payments by applying the pre-2004 policy, which would be reinstated by vacatur of the 2023 rule and would leave the agency "well-equipped to make statutorily mandated DSH payments without relying on retroactive rulemaking authority." Mem. Op. 35-36, 2025 WL 2801237, at \*16.

Nonetheless, the government posits another option on remand because this Court supposedly "did not address the question expressly reserved by the Supreme Court in *Allina [II]*: whether rulemaking is necessary in the first place under § 1395hh(a)(2) when," in light of *Empire*, "the statute itself require[s] [the Secretary] to count Part C patients." Def.'s Suppl. Mem. 5-6 (second and third alterations in original) (citing *Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*, 597 U.S. 424 (2022)). Tracking the rule, however, the government in briefing raised this *same argument*. *See* 88 Fed. Reg. 37772, 37775 (June 9, 2023) (arguing that after *Empire* "the statute itself establishes the applicable 'substantive legal standard,'" so there is no need for a "'gap-filling policy' that would trigger the notice-and-comment obligations" or "retroactive rulemaking authority"); Mem. in Supp. of Def.'s Cross-Mot. for Summ. J. & in Opp'n to Pl.'s Mot. for Summ. J. 19, Dkt. No. 22 (arguing that after *Allina II* and *Empire*, no rulemaking is necessary because the "statute itself required [the Secretary] to count Part C patients in the Medicare fraction" (alteration in original)); Reply Mem. in Further Supp. of Def.'s Cross-Mot. for Summ. J. 11, Dkt. No. 28 ("*Empire* has made clear that the statute itself already supplies the controlling legal standard . . . .").

And the Court squarely rejected that argument. As this Court explained, whether the agency proceeds with or without rulemaking is beside the point:

> [E]ven if notice and comment were not necessary, the Medicare statute's retroactivity provision would still apply. That subsection, 42 U.S.C.

3

§ 1395hh(e)(1)(A), addresses substantive changes in agency action, not to a legal standard. While a legal standard may be "fixed" when a statute is enacted, an agency's decision to adopt it decades later and apply it to past conduct is subject to Section 1395hh(e)(1)(A)'s allowances for retroactivity.

Mem. Op. 30-31, 2025 WL 2801237, at *14. Thus, the government's attempt to exploit the issue left open in "*Allina II* does little to advance the Secretary's position that once a 'statute already dictates [a] result, . . . there is no need to apply a rule at all—retroactively or otherwise.'" Mem. Op. 30, 2025 WL 2801237, at *14 (alterations in original). In extending section 1395hh(e)'s retroactivity limit to "'*interpretative rules, [and] statements of policy*,'" Congress contemplated that the agency's understanding of a statutory provision might change. Mem. Op. 28, 2025 WL 2801237, at *13 (quoting 42 U.S.C. § 1395hh(e)(1)(A)). And it "opted for the retroactivity exceptions to condition the Secretary's ability to apply that interpretation retroactively." *Id.*

On remand, to try once again to implement its interpretation of the DSH provision as to part C days following *Empire*, the agency would need to take *some action*. Any such action, regardless of procedural form, would necessarily reflect a change from the reinstated, pre-existing pre-2004 policy and, thus, be subject to section 1395hh(e). *See* Mem. Op. 30-31, 2025 WL 2801237, at *14 (explaining that section 1395hh(e)(1)(A) "addresses substantive changes in agency *action*" (emphasis added)). The government's approach would give the agency *more* leeway to act retroactively when providing *less* than the advance notice section 1395hh requires, and "nullify the statutory scheme Congress designed." Mem. Op. 28, 2025 WL 2801237, at *13. Contrary to the government's claim then, *see* Def.'s Suppl. Mem. 3, direction to apply the reinstated pre-2004 policy is not direction to violate the Medicare statute, but to obey it.

The government fares no better by attempting to dress up its own policy change as a retroactive application of a judicial decision. The government claims it could apply the statutory interpretation reflected in the *Empire* decision on remand because judicial decisions must be given

retroactive effect.  Def.'s Suppl. Mem. 6.  But the Court already rejected the agency's attempt to apply its view of *Empire* retroactively as to part C days for pre-2013 cost years because the agency did not and cannot comply with section 1395hh(e).  Mem. Op. 31, 2025 WL 2801237, at *14. Congress specifically prohibited the agency from taking any action (in any form) to apply a changed interpretation retroactively unless the agency meets standards this Court has already held the government cannot meet, Mem. Op. 40, 2025 WL 2801237, at *19, and the government does not seek to try to meet on remand, Def.'s Suppl. Mem. 11.  There is no carveout for actions taken to implement judicial decisions, never mind a carveout for judicial decisions like *Empire*, which the government acknowledges does "not expressly address" the precise question of whether to count part C days as part A-entitled, Mem. in Supp. of Def.'s Mot. for Summ. J. 17; *see also* Mem. Op. 27, 2025 WL 2801237, at *12 (holding the government "offers no support for the notion that once a court interprets a statute, an agency has an automatic license to apply that interpretation retroactively through the rulemaking process").

*Second*, remand instructions are independently warranted because the government's remedy brief confirms that the agency will disregard this Court's recent ruling on retroactivity just like it disregarded prior judicial rulings over the past 20 years of this litigation.  The law of this Circuit is clear—and undisputed by the government—on the implications of continual, invalid agency do-overs.  When an agency repeatedly fails—or refuses—to remedy its unlawful action, further remand is futile, and the Court may issue specific instructions to resolve the dispute.  Pl.'s Suppl. Mem. 9-11.  Here, the government had *decades* and multiple remands without instructions to try to count part C days for pre-2013 cost years.  *See id.* at 8-9.  It failed at every turn.

And the government's brief promises more of the same on remand.  The only path forward it proposes is one this Court already expressly rejected.  *See supra* 3-5.  And it refuses to accept

5

that the agency had a pre-2004 policy of excluding part C days, *compare* Mem. Op. 35, 2025 WL 2801237, at \*16 (recognizing existence of pre-2004 "policy" identified in *Northeast* and *Allina I*), *with* Def.'s Suppl. Mem. 3 (referring to pre-2004 "practice" but not policy), and disregards the application of that policy as a solution to its supposed conundrum, *see* Def.'s Suppl. Mem. 5-7. That position is in keeping with the government's longstanding "disregard[]," *Allina I*, 746 F.3d at 1108, of the holdings of the D.C. Circuit in *Northeast Hospital*—a case the government tellingly fails to mention in discussing the decisions with which it purportedly complied, *see* Def.'s Suppl. Mem. 3-5, 7-8—and *Allina I*, both of which held that the agency had this pre-2004 policy. *See* Mem. Op. 34-35, 2025 WL 2801237, at \*16 (citing *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 16-17 (D.C. Cir. 2011) and *Allina I*, 746 F.3d at 1108); Pl.'s Suppl. Mem. 3.  The continuing disregard of these holdings shows that, without instructions, the agency would never consider applying the pre-2004 policy to make required pre-2013 DSH payments.  *Compare* Def.'s Suppl. Mem. 5-6 (indicating agency would need to consider how to comply with the statute on remand), *with* Mem. Op. 35-36, 2025 WL 2801237, at \*16 (finding agency can use pre-2004 policy for DSH payments).

The government points to the lack of specific instructions in *Allina I*, Def.'s Suppl. Mem. 2-3, but that decision turned on a question that was unsettled at the time: whether the agency "could reach the same result" of changing its pre-2004 policy "through adjudication," *Allina I*, 746 F.3d at 1111.  The D.C. Circuit has since concluded it cannot.  *Allina Health Servs. v. Price (Allina II)*, 863 F.3d 937, 945 (D.C. Cir. 2017) ("HHS could not circumvent [the Medicare statute's notice-and-comment rulemaking] requirement by claiming that it was acting by way of adjudication rather than rulemaking.").  Thus, unlike in *Allina I*, there are no other options for the agency to try on remand because both rulemaking and adjudication to apply the new statutory interpretation retroactively are off the table—as are changes to "manual instructions, interpretative rules,

6

statements of policy, or guidelines of general applicability," 42 U.S.C. § 1395hh(e).  If anything, the failure to issue specific instructions in *Allina I* shows why they are needed now.  Here we are, more than a decade later, and the agency still "disregards," *Allina I*, 746 F.3d at 1108, the holdings of the D.C. Circuit and now this Court that the agency had a pre-2004 policy, which it can use to make DSH payments, *see* Mem. Op. 35-36, 2025 WL 2801237, at \*16.  To prevent yet another decade of agency "gamesmanship," *Allina Health Servs. v. Sebelius (Allina I)*, 904 F. Supp. 2d 75, 77 n.2 (D.D.C. 2012), and to effectuate the Court's finding of impermissible retroactivity, the Court should issue specific instructions for the agency to follow on remand.

### CONCLUSION

For these reasons, the Court should vacate the impermissibly retroactive 2023 rule and instruct the agency to do what the law requires: abide by the Medicare statute's anti-retroactivity protections and make DSH payments due under the reinstated pre-2004 policy.

Respectfully submitted,

*/s/ Stephanie A. Webster*
Stephanie A. Webster
  D.C. Bar No. 479524
Chetan A. Patil
  D.C. Bar No. 999948
Adam R. Safadi
  D.C. Bar No. 241305
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20006-6807
stephanie.webster@ropesgray.com

*Counsel for Plaintiff*

Dated: February 23, 2026

7